IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| LEONARD A. CALABREE and : <br> JULIA MANIERI, as Executors of the : <br> Estate of Lucille Calabree, : <br>     Plaintiffs, : <br> : <br> v. : <br> : <br> EATON MEDICAL PLAN FOR RETIREES : <br> AND OTHER ELIGIBLE INDIVIDUALS, : <br>     Defendant. : | CIVIL ACTION <br><br><br><br><br> No.: 13-cv-00828 |

**MEMORANDUM**

**SITARSKI, M.J.**                                                                                   **June 24, 2015**

Presently before the Court is Plaintiffs' Motion to Request Additional Discovery (ECF No. 19), Defendant's Response in opposition thereto (ECF No. 22), Plaintiffs' Reply (ECF No. 26), and Defendant's Sur-Reply (ECF No. 29). For the reasons set forth below, Plaintiffs' Motion to Request Additional Discovery is **GRANTED IN PART** and **DENIED IN PART**.

**I.     FACTUAL AND PROCEDURAL OVERVIEW**

Leonard A. Calabree and Julia Manieri ("Plaintiffs") are the executors of the Estate of Lucille Calabree ("Ms. Calabree"). (Am. Compl. ¶ 1, ECF No. 3).[1] At all times relevant to this matter, Lucille Calabree was a beneficiary of the Eaton Medical Plan for Retirees and Other Eligible Individuals (the "Plan" or "Defendant"), as defined under the Employee Retirement Income Security Act ("ERISA"). (*Id.* ¶ 6).

In 2010, Ms. Calabree was admitted to Pickering Manor, a nursing home. (*Id.* ¶ 9). At

---

[1] The Amended Complaint and Answer in this matter are both provided under Civil Docket Number 13-7371. That matter was consolidated into the instant case, and has been designated as closed. (Order, Dkt. 13-07371, ECF No. 7).

the time, Coventry Health was the Claims Administrator for the Plan. (*Id*. ¶ 8). Coventry covered Ms. Calabree's stay at Pickering Manor from the time of her admission through December 31, 2010. (*Id*. ¶ 10). On January 1, 2011, UMR became the Claims Administrator. (*Id*. ¶ 8). UMR subsequently determined that Ms. Calabree's care at Pickering was not covered by the Plan because it was exempt "custodial care" rather than covered "regular medical treatment." (*Id.* ¶ 11).

Following UMR's determination, Ms. Calabree appealed, contending that her care was medically necessary and was being provided by a skilled nursing facility, which the Plan covered. (*Id*. ¶¶ 13-16). The adverse benefit determination was upheld following three appeals, though Ms. Calabree remained at Pickering Manor until her death on November 26, 2012.[2] (Am. Compl. ¶¶ 13-17). In the present civil action, Plaintiffs seek to recover the benefits denied to Ms. Calabree under ERISA. Plaintiffs claim that, in the event Ms. Calabree's care was not covered by the Plan, Defendant is liable for breach of fiduciary duty for misrepresenting the terms of the Plan. (Am. Compl. ¶¶ 18-21).

On February 2, 2015, Defendant provided Plaintiffs with a copy of the Administrative Record. (Def.'s Reply 2, ECF No. 22). Specifically, Defendant produced (1) the Eaton Corporation Medicare PFFS Advantra Freedom Plan Evidence of Coverage (January 1-December 31, 2007) ("PFFS") and (2) the Eaton Corporation Medical Plan for Retirees and Other Eligible Individuals Summary Plan Description ("Summary Plan Description" or "SPD"). (*Id*.). Plaintiffs then filed the instant motion, contending that the Administrative Record was

---

[2] The Complaint references UMR's "Final Adverse Benefit Determination" following a second appeal and the Plan's adverse disability determination following a third appeal. (Pl.s' Am. Compl. ¶¶ 2, 15, 16). However, neither of these documents are attached to the Complaint.

2

incomplete because it failed to reference the governing Plan language which formed the basis of the denial or identify the governing Plan document which governed Ms. Calabree's claim.[3] (Pl.s' Mot. ¶¶ 6-7).

Following Plaintiffs' Motion, Defendant produced the Eaton Corporation Medical Plan for Retired U.S. Employees (the "Wrap Plan"), (Def.'s Resp. 5, ECF No. 22); (Pl.s' Reply Ex. 2, ECF No. 24-4), as well as the Declaration of Douglas Grossman-McKee, Eaton's Director of Health and Welfare, which attests that the SPD and the Wrap Plan constitute the entirety of the governing Plan documents. (Decl. of Dennis Grossman-McKee ¶¶ 5-6 [hereinafter, "McKee Decl."], ECF No. 29-1).

The Honorable C. Darnell Jones referred the parties' discovery dispute to me for disposition pursuant to 28 U.S.C. § 636(b)(1)(A). (Order, ECF No. 7). This Court held an on-the-record telephone conference with counsel. (Minute Entry, ECF No. 32). At the Court's instruction, Plaintiffs thereafter submitted proposed Requests for Production ("RFPs") and proposed interrogatories, and Defendant submitted its objections thereto. This matter is now ripe for resolution.

For the reasons that follow, Plaintiffs' request for additional discovery is denied, with the exception of Request for Production Five.

---

[3] Plaintiffs also requested discovery to uncover the identity of the individual(s) who reviewed Ms. Calabree's claim, claiming that they were entitled to this information to determine if Defendant fully complied with Department of Labor claims regulations. (Pl.s' Mot. 5 n.3). However, as Defendant has provided the identity of the relevant decision maker, Plaintiffs have advised that this portion of its discovery request is moot. (Pl.s' Reply 4 n.3, ECF No. 24-1).

3

## II. SCOPE OF DISCOVERY IN ERISA CASES

Federal Courts have broad discretion to manage discovery, *Sempier v. Johnson*, 45 F.3d 724, 737 (3d Cir. 1995), and it is well-recognized that the Federal Rules of Civil Procedure permit broad and liberal discovery. *Pacitti by Pacitti. v. Macy's*, 193 F.3d 766, 777 (3d Cir. 1999). The Rules allow parties to obtain discovery regarding "any matter, not privileged, that is relevant to any party's claim or defense." Fed. R. Civ. P. 26(b)(1). However, in the ERISA context, the usual broad scope of discovery is limited by the statute's goal of a speedy, efficient resolution of claims. *Sivalingam v. Unum Provident Corp.*, 735 F. Supp. 2d. 189, 196 (E.D. Pa. 2010). Moreover, the standard of review applied in an ERISA denial of benefits case bears significantly on the scope of discovery permitted. *See, e,g.*, *Aquilino v. Hartford Life and Accident Ins. Co.,* No. 10-2044, 2010 WL 3505172 (E.D. Pa. Aug. 31, 2010) (resolution of discovery dispute "turns on what standard of review applies at trial"); *Atkins v. UPMC Healthcare Benefits Trust*, No. 13-520, 2013 WL 6587170, at *2 (W.D. Pa. Dec. 16, 2013) ("The standard of review will materially impact the scope of information that may be considered by the Court."); *Moran v. Life Ins. Co. of N. Am. Misericordia Univ*., No. 13-765, 2014 WL 4251604, at *3 (M.D. Pa. Aug. 27, 2014) ("[T]he propriety of Plaintiff's discovery requests depends upon the standard of review to be applied.").

Pursuant to ERISA, a person denied benefits under an employee benefit plan may challenge that denial in federal court. *See* 29 U.S.C. § 1132(a)(1)(B). "Ordinarily, a court reviewing a plan administrator's decision to deny a benefits claim should apply a de novo standard of review." Firestone Tire & Rubber Co. v. Bruch, 489 U.S. 101, 113 (1989). However, if the ERISA plan under consideration gives the administrator discretionary authority to determine eligibility for benefits or to construe the terms of the plan, the reviewing court

should apply an "arbitrary and capricious" standard.[4]  *Id.*; *see also Miller v. Am. Airlines, Inc.*, 632 F.3d 837, 845 and n. 2 (3d Cir. 2011); *Estate of Kevin Schwing v. Lilly Health Plan*, 562 F.3d 522, 525 (3d Cir. 2009).

Under de novo review, the reviewing court has discretion to consider supplemental evidence, even if it was not presented to the administrator.  *See Viera v. Life Ins. Co. of North America*, 642 F.3d 407, 418 (3d Cir.2011); *Atkins*, 2013 WL 6587170, at *2; *Laslavic v. Principal Life Ins. Co.*, No. 11-684, 2013 WL 254450, at *9 (W.D. Pa. Jan. 23, 2013) ("a court reviewing a benefits decision de novo has discretion to consider 'any supplemental evidence' presented by the parties.").  By contrast, when employing an arbitrary and capricious standard of review, the Court is generally limited to the administrative record and discovery is correspondingly limited.  *See Post v. Hartford Ins. Co.*, 501 F.3d 154, 168 (3d Cir. 2007); *Kosiba v. Merck & Co.*, 384 F.3d 58, 67 n. 5 (3d Cir. 2004).  Nevertheless, an exception to the general rule against discovery outside the administrative record under the arbitrary and capricious standard is that a court may consider circumstances suggesting structural or procedural conflicts of interest in the denial of benefits.  *See Miller v. American Airlines, Inc.*, 632 F.3d 837, 845 (3d Cir. 2011).

---

[4] In the ERISA context, "abuse of discretion" is used interchangeably with "arbitrary and capricious" to describe the standard of review that applies when applied when an ERISA plan reserves discretion for the administrator.  *Howley v. Mellon Fin. Corp.*, 625 F.3d 788, 793 n.6 (3d Cir. 2010); *Sivalingam*, 735 F.Supp.2d at 193.  "To be insulated from de novo review, a plan must communicate the idea that the administrator not only has broad-ranging authority to assess compliance with pre-existing criteria, but also has the power to interpret the rules, to implement the rules, and even to change them entirely."  *Viera v. Life Ins. Co. of N. Am.*, 642 F.3d 407, 417 (3d Cir. 2011) (quoting *Diaz v. Prudential Ins. Co. of Am.*, 424 F.3d 635, 639 (7th Cir. 2005)).

As the Supreme Court explained, a structural conflict emerges when the employer both funds the plan and evaluates the claims because every dollar provided in benefits is a dollar spent by the employer, and every dollar saved is a dollar in the employer's pocket. *See, e.g., Metro. Life Ins. Co. v. Glenn*, 554 U.S. 105, 123–24 (2008); *see also Miller*, 632 F.3d at 845 ("the structural inquiry focuses on the financial incentives created by the way the plan is organized."). Accordingly, many courts have held that plaintiffs in ERISA benefit cases are entitled to pursue limited discovery concerning the potential conflict of interest posed by an insurer's dual role as decision-maker and payer of benefits. *See, e.g., Rhodes v. Principal Fin. Grp., Inc.*, 4:10-290, 2010 WL 4867618, at *12 (M.D. Pa. Nov. 23, 2010).

In comparison, a procedural conflict exists when there is an irregularity or bias in the review process. *See, e.g., id.* at *2. This inquiry focuses on how the administrator treated the particular claimant. *Post*, 501 F.3d at 165 ("In considering procedural factors, the focus is whether, in this claimant's case, the administrator has given the court reason to doubt its fiduciary neutrality."); *see also Miller*, 632 F.3d at 845.

## III. DISCUSSION

### A. Standard of Review

As a threshold matter, the parties have a substantive dispute as to the standard of review that should apply in this ERISA denial of benefits of case, which implicates the scope of discovery available. Defendant argues that an arbitrary and capricious standard applies based on the grant of discretion in the Summary Plan Description, which provides:

> The Plan Administrator and/or Heath Plan Claims Administrator *has discretionary authority* to determine eligibility for benefits and to construe any and all terms of the Plan, including but not limited to

> any disputed or doubtful terms. The Plan Administrator and/or Health Plan Claims Administrator *also has the power and discretion* to determine all questions arising in connection with the administration, interpretation and application of the Plan.

(Def.'s Resp. 3-4, ECF No. 22) (emphasis added); (Def.'s Sur-Reply Ex. 3 at 66, Admin. Rec. 000172, ECF No. 27-5). Defendant argues that this language in the SPD became a term of the Plan by operation of the Wrap Plan, which states:

> The Plan is composed of two parts: Part 1, consisting of this document, which sets forth the administrative, fiduciary, and other provisions applicable to the overall administration of the Plan; and Part 2, consisting of the Operative Documents which set for the benefit and eligibility provisions applicable to the Medical Programs offered under the Plan at the Locations. Such operative documents may include, but are not limited to, plan summaries and other appropriate documents and/or provisions thereof that are selected by the Company as comprising the Medical Programs. In the event that a provision of an Operative Document conflicts with a provision of this document, the provision of the Operative Document shall govern.

(Wrap Plan Art. 1, §1, ECF No. 27-3); (Def.'s Sur-Reply 2, ECF No. 27-2). The Wrap Plan further defines "Operative Documents" as:

> [T]he documents for each Location (which may include, but are not limited to, plan summaries and other appropriate documents and/or provisions thereof) selected by the Company as comprising each Medical Program that detail the eligibility, benefits, benefit restrictions and other operative aspects of each Medical Program under the Plan. The Operative Documents, as they may be amended, added or deleted from time to time, are incorporated herein by reference.

(*Id.* at §1.3(f), ECF No. 27-3). To establish that the SPD was an operative document selected by the Defendant as part of the Plan, Defendant has provided the McKee Declaration.

Plaintiffs respond that the SPD language purporting to grant discretion does not control absent some evidence that Defendant took formal corporate action to incorporate the SPD as an operative plan document. (Pls.' Mot. ¶¶ 5-6, 8). In response, Defendant provided the Wrap Plan

7

and the McKee Declaration, but Plaintiffs maintained that any purported incorporation or adoption of the SPD was ineffective. (Pls.' Reply 3-4, ECF No. 24-1). Notably, Plaintiffs have not argued whether the grant of discretion in the SPD, if credited, would give rise to an arbitrary and capricious standard of review; rather, they contend that they are entitled to discovery to determine if the SPD was ever formally adopted as a governing plan document.[5]

This Court will not determine the standard of review that will ultimately apply to this action. While it is true that the standard of review implicates the scope of discovery, "[p]recedential opinions within the Third Circuit have not established that a magistrate judge must make a determination regarding the standard of review applicable to a challenge of a plan administrator's decision under ERISA during the discovery stage." *Holt v. Prudential Ins. Co. of Am.*, No. 05-1529, 2007 WL 1071971, at *3 (D.N.J. Apr. 5, 2007). Other courts have likewise determined that resolution of the standard of review, though not *per se* impermissible at the discovery stage, is ill-advised if the parties have not been given the opportunity to fully brief and argue the issue, as is the case here. *See, e.g.*, *Quinones v. First Unum Life Ins. Co.*, No. 10-8444, 2011 WL 797456, at *1 (S.D.N.Y. Mar. 4, 2011) (determination of the standard of review premature at discovery phase of litigation); *Anderson v. Sotheby's Inc. Severance Plan*, No. 04-8180, 2005 WL 6567123, at *4 (S.D.N.Y. May 13, 2005) (magistrate judge declined to determine standard of review during discovery phase based on the record before him); *Medford v. Metro. Life Ins. Co.*, 244 F. Supp. 2d 1120, 1124 (D. Nev. 2003) ("the task of the court here is to determine the scope of discovery, if any, that plaintiff may seek in discovery, not what standard of review should ultimately be applied to the outcome of this case").

---

[5] The specific discovery requests Plaintiffs have promulgated related to this point are addressed in subpart B, subsection 1, *infra*.

Because the standard of review that will ultimately apply to the merits of this case is undetermined, this Court will consider whether discovery is appropriate under either standard of review. *See Parsow v. Parsow's Fashions for Men, Inc.*, No. 11-297, 2013 WL 241728, at *5 (D. Neb. Jan. 22, 2013).

### B. Plaintiffs' Discovery Requests

The Court will address Plaintiffs' discovery requests as follows: (1) discovery requests relating to the standard of review; (2) remaining requests for production; (3) remaining interrogatories.

#### 1. Discovery Relating to the Standard Review

Plaintiffs' first set of discovery requests relates to whether or if Defendant ever took formal corporate action to incorporate the SPD as a governing plan document. Specifically, Plaintiffs have requested that Defendant produce:

1. All documents evidencing the adoption or incorporation of the 2011 [SPD] as an "Operative Document" within the meaning of the Plan, whether by the Eaton Corporation or any other entity. (RFP Two)

2. Any documents evidencing Eaton Corporation's delegation of authority, if any, to any other entity or individual, to adopt the 2011 [SPD] as an Operative Document under the Plan. (RFP Three)

Additionally, Plaintiffs have requested responses to the following interrogatories:

1. Describe in detail the process or processes by which Eaton Corporation incorporated a [SPD] or other Operative Document as an Operative Document into the Plan. (Interrogatory One)

2. Identify any amendments since the Plan's adoption in 1999, including the date(s) of such amendment, and the substantive terms thereof. (Interrogatory Two)

3. In implementing the 2011 [SPD], describe the process by which the [SPD] was incorporated into the Plan, including whether the Plan Sponsor considered the adoption to be an amendment of the Plan and followed the provisions of § 7.1 of the Wrap Document for such amendment. (Interrogatory Four)

Defendant contends that these discovery requests are irrelevant, immaterial, not reasonably calculated to lead to the discovery of admissible evidence, overbroad, and unduly burdensome. Having considered the parties' arguments, the Court agrees that Plaintiffs have not demonstrated the relevance of these document requests pursuant to Federal Rule of Civil Procedure 26(b)(1), nor have Plaintiffs demonstrated how these requests could go to a structural or procedural conflict of interest. Accordingly, the Court finds these discovery requests are not merited under either standard of review.

Plaintiffs contend that they cannot know whether the SPD is an operative plan document without information demonstrating that Defendant ever took formal corporate action to adopt the SPD. In support of this argument, Plaintiffs' rely on *CIGNA Corp. v. Amara*,–– U.S. ––––, 131 S.Ct. 1866 (2011). In *Amara*, the Supreme Court explained that statements in summary plan descriptions "provide communication with beneficiaries about the plan, but . . . their statements do not themselves constitute the terms of the plan . . .." (Pls.' Mot. ¶ 6) (quoting *Amara*, 131 S.Ct. at 1878). However, Plaintiffs have cited no cases demonstrating that *Amara* requires formal corporate action before an SPD may provide governing plan language, and the Court can locate no precedential decision in Third Circuit so holding. Tellingly, other Circuit Courts to have considered this issue after *Amara* have enforced SPD terms even absent formal corporate action. For instance, in *Eugene S.*, the Tenth Circuit gave deference to a grant of discretion in an SPD where the SPD stated on its face it was part of the Plan. 663 F.3d at 1131. In *Tetreault v. Reliance Standard Life Ins. Co.*, 769 F.3d 49, 55 (1st Cir. 2014), the First Circuit held that where a Plan states that it expressly incorporates the terms of an SPD, and the terms are not conflict with the Plan terms, the SPD terms are enforceable. *See id.* at 55 ("every court that has considered the issue has held that *Amara* poses no automatic bar to a written instrument's

10

express incorporation of terms contained in a summary plan description") (citing cases); *accord Young v. United Parcel Servs., Inc. Employees' Short Term Disability Plan*, 416 F. App'x 734, 738 (10th Cir. 2011) (where plan expressly incorporates terms of SPD and is not in conflict with SPD, discretionary language provided in the SPD governs) (not precedential).

In this Circuit, district courts determining whether SPD terms are enforceable have looked to whether the SPD provisions are labeled by the plan administrator as legally enforceable or are referred to in the plan certificate. *See, e,g.*, *Strott v. Dimensional Inv., LLC Health & Welfare Plan*, No. 13-1245, 2015 WL 1299773, at *8 (W.D. Pa. Mar. 23, 2015) (reviewing cases), *appeal pending*, Case No. 15-1990.; *Frey v. Herr Foods Inc. Employee Welfare Plan*, No. 11-1416, 2012 WL 6209896, at *3 (E.D. Pa. 2012) (terms in summary document could be given deference when provisions are specifically identified as legally binding or are incorporated into the plan); *Moran*, 2014 WL 4251604, at *8 (declining to enforce grant of discretion in SPD because neither SPD or any other Plan document stated that the terms of the SPD were integrated into the Plan). Thus, the Court does not agree that Plaintiffs are entitled to discovery based on *Amara*, as this case does not require corporate formal action for an SPD to be a part of a Plan or to provide a governing Plan term.

Plaintiffs alternatively argue in Reply that they are entitled to discovery to determine if the SPD acted to amend the Plan because "[o]nly a formal written amendment, executed in accordance with the Plan's own procedure for amendment, could change the Plan." (Pls.' Reply 3) (citing *Curtiss-Wright Corp. v. Schoonejongen*, 514 U.S. 73 (1995)). *Curtiss* is not on point because the SPD is not an amendment to the Plan; rather, as Defendant has repeatedly represented, the SPD is an operative document. Even assuming for the sake of argument that the SPD was an amendment, *Curtiss* still would not entitle Plaintiffs to discovery. In that case, the

Supreme Court explained that there are *de minimis* requirements to amend a Plan under § 402(b)(3) of ERISA: a "procedure for amending [the] plan" and "[a procedure] for identifying the persons who have authority to amend the plan." 514 U.S. at 78. According to the Supreme Court, the statute is "ultimately indifferent to the level of detail in an amendment procedure" and thus a company is bound only to level of specificity that it sets forth. *Id.* at 80, 85. Plaintiffs have already obtained the documents that comprise the Plan, yet have pointed no language suggesting that Defendant did not act in accordance with its own procedures, or in accordance with the *de minimis* statutory requirements. Accordingly, the Court finds discovery is not merited on this basis either.

In sum, Defendant has already provided the materials Plaintiffs require to determine if the SPD in fact provides an enforceable Plan term: the Wrap Plan and the SPD. Even under the most liberal discovery standard, Plaintiffs have failed to establish the relevance of RFPs Two and Three, and Interrogatories One, Two and Four. Thus, the Court will deny these discovery requests.

### 2. Remaining RFPs

In RFP One, Plaintiffs request that the Court order Defendant to produce "Appendix A" to the Wrap Plan. According to the Wrap Plan:

> The Plan is composed of two parts: Part 1, consisting of this document . . . and Part 2, consisting of the Operative Documents which set forth the benefit and eligibility provisions applicable to the Medical Programs offered under the Plan at the Locations. . . . *Appendix A contains certain information regarding Medical Programs in effect at the Locations.*

(Wrap Plan Art. I, § 1) (emphasis added). Plaintiffs argue that because the Wrap Plan refers to Appendix A, and Defendant failed to provide it in the administrative record or when it produced

the administrative record, "there is no evidence of what constituted an operative document at the time the plan was originally adopted." (Pls.' Reply 3). Defendant responds that the SPD and the Wrap Plan were the only Operative Documents in effect at the time of Ms. Calabree's claim, and thus Appendix A is irrelevant.

In *Kerber v. Qwest Group Life Ins. Plan*, the United States District Court for the District of Colorado considered the relevance of Plan appendices. *See* No.07-00644, 2008 WL 4630558, at *2 (D. Colo. Oct. 17, 2008). In ultimately determining that a plan appendix was relevant, the Magistrate Judge in *Kerber* considered that the appendix in question was attached as a relevant plan document to the affidavit of the defendant's director of employee benefits. *Id.* at *3. Moreover, the defendant had also provided a version of the plan to the plaintiff that contained the appendix. *Id.* Here, by contrast, the McKee affidavit does not reference or include Appendix A; rather, it expressly provides that the only operative document in effect at the time of the adverse benefit determination was the SDP. Moreover, Defendant has never included Appendix A as a Plan document, even when it produced the Wrap Plan in this action. This Court has no reason to doubt Defendant's representation as Officers of the Court that Appendix A was not relied upon in making the adverse disability determination in this case and thus is not relevant to Plaintiffs' claim. Therefore, Plaintiffs have not established the relevance of this discovery request, nor have they shown how this document could establish a structural or procedural conflict of interest. Accordingly, RFP One is denied.

In RFP Four, Plaintiffs request "all documents pertaining to the steps the Plan Administrator took to ensure it provide[d] the governing plan documents, as requested by plaintiff, through counsel, pursuant to 29 U.S.C. § 1132(c)." Defendant contends that this RFP

13

is irrelevant and, in the alternative, unduly burdensome, because Plaintiffs have not made a claim under 29 U.S.C. § 1132(c). The Court agrees with Defendant.

Section 502 of ERISA provides for a private cause of action against any "plan administrator who fails or refuses to comply with a request for any information." 29 U.S.C. § 1132(c)(1)(B). "In order to state a claim under § 1132(c)(1), a plaintiff must allege that 1) it made a request to a plan administrator, 2) who was required to provide the requested material, but 3) failed to do so within 30 days of the request." *Narducci v. Aegon USA, Inc.*, No. 10–955, 2010 WL 5325643, at *3 (D.N.J. Dec. 15, 2010). Plaintiffs' Amended Complaint generally asserts a claim for relief for breach of fiduciary duty, alleging that Defendant "misled Plaintiffs as to the coverage of Ms. Calabree's care." (Am. Compl. ¶ 20). However, they have not contended or alleged that the Plan Administrator refused to provide required Plan documents upon request. Because the Complaint does not seek monetary damages pursuant to 29 U.S.C. § 1132(c), this discovery request is denied.

Finally, in RFP Five, Plaintiffs ask for "All documents pertaining to Defendant's reason or reasons for including the [PFFS] in the administrative record created by defendant." Defendant responds that this request is irrelevant and immaterial under the arbitrary and capricious standard of review.

As explained above, this Court will not presuppose that an arbitrary and capricious standard of review will apply to the parties' dispute. However, if this standard of review were to apply, the Court finds RFP Five relevant to a procedural conflict of interest. Plaintiffs have argued that because the PFFS expired prior to the relevant review period and because it appears to be a separate Medicare supplement plan with its own appeal processes, it is troubling that this document was included in the administrative record. (Pl.s' Mot. ¶ 4). The Court agrees. The

inclusion of the PFFS in the original administrative record might support an argument that Defendant may have used inadequate or inappropriate information in denying Ms. Calabree's claim. Accordingly, the Court will grant Plaintiff's discovery request and order Defendant to produce documents responsive to RFP Five.

### 3. Remaining Interrogatories

Plaintiffs' sole remaining Interrogatory is Interrogatory Three, in which Plaintiffs request that Defendant "Identify each Operative Agreement governing any health plan sponsored by Eaton Corporation under which Lucille Calabree was covered as a participant or beneficiary from 2009 through her death in 2012." Defendant responds that this Interrogatory is irrelevant, overbroad, and unduly burdensome. Notably, Defendant has represented to Plaintiffs that the SPD and Wrap Plan were the only Operative Documents in effect at the time of the adverse disability determination, and has provided an affidavit to this effect. The Court agrees with Defendants that it cannot produce that which it has already represented does not exist, and will deny this discovery request.

## IV. CONCLUSION

For the foregoing reasons, Plaintiffs' Motion for Additional Discovery is **GRANTED IN PART** and **DENIED IN PART**. An appropriate Order follows.

BY THE COURT:

　/s/ Lynne A. Sitarski　
LYNNE A. SITARSKI
UNITED STATES MAGISTRATE JUDGE